Tujeiley, J.
delivered the opinion of the court.
These are actions brought by James Kannon against William Pillow, to recover rent and waste, under the following circumstances. Kannon owned a tract of land, which was sold under execution and purchased by Pillow. Pillow at the time of his purchase, took from the sheriff a deed for the land, and went into immediate possession; about six months before the two years allowed by law for the redemption of land, sold under execution, Kannon redeemed the land from Pillow; and the question now is, can he recover rent from him for the time he was in possession, and damages for waste committed during that period;5 And we are constrained to hold, upon principle, that he cannot.
We do not think that the relation of the owner and purchaser of a tract of land sold under execution is that of mortgagor and mortgagee under the provisions of the act of 1820, ch. 2, allowing the period of two years for redemption. The purchaser becomes the absolute owner of the land, and receiving a deed, and entering into possession, is entitled to the rents and profits, *293 and the former owner has nothing but the naked right of redemption, which is irretrievably lost, if it be not asserted in the *time and manner prescribed by law.
There is no similarity between such an estate, and that acquired by a mortgagee; it can be better assimilated to the sale of land, with the liberty of re-purchase; in which case, the ven-dee, if he go into possession, cannot be made liable for rents and profits, because the land is absolutely his, until the condition be performed, by which it reverts to the former owner.
The case of Sheratts vs. Firestone, we are strongly of the opinion, was improperly decided; but be that as it may, the case is not in all respects similar to this — Firestone had received no deed for Sheratts’ land, which Judge Robert Whyte held, was necessary, notwithstanding Sheratts’ agreement, to enable him to recover the rent; and we, therefore, think his opinion is in accordance with our view of this case.
Upon the same principle, we think, it follows necessarily, Kannon can maintain no action for waste committed by Pillow, anterior to the time of the redemption.
But we think, that in as much as Kannon redeemed the land six months before the two years expired, he was then entitled to the possession of all the land, upon which Pillow had not a growing and ungathered crop, and that for this he is entitled to a reasonable rent for the time he was kept out of the possession after the redemption; it was error not to have allowed him this, for which the judgment in the action for rent will be reversed, and the case remanded for a new trial.
The judgment in the action for waste will be affirmed.
Note. — The following are opinions delivered in the case of Sheratts vs. Firestone. The case was decided many years ago at Knoxville and the opinions are deemed worthy of preservation as part of the judicial investigations which have taken place on the subject of the redemption law of 1820.
Whyte J.
The only question between the parties in this case is, the item in the account allowed by the Chancellor in favor of Sheratts for the rent, from the time of the sale of the land under the execution against him, *294 at which Firestone became the purchaser, and its redemption under the act of 1820, c. 11.
It is contended for Firestone that he became by his purchase at the execution sale, the owner of the land, and as such was entitled to the rents and profits until redemption; he therefore claimed rent from Sheratts, the debtor in the execution sale, who agreed to pay him $50 per annum; and he, Sheratts, thereupon continued in possession and enjoyed the same.
The act of 1820 c. 11, says, that any debtor whose interest in real estate may be sold under execution, at any time within two years after such sale, upon payment &c. &e. may redeem the interest that may have been sold; and upon such payment it shall be the duty of the then claimant to recon-vey said interest to the debtor &c. It is argued for Firestone, the purchaser under the execution, that under this act, and by force thereof, he took the freehold, or other legal estate that was vested in the execution debtor; and that such effect of the act is manifested by the expression in it, which says, that upon payment, &c. &c. it shall be the duty of the claimant to reconvey said interest to said debtor; that the words “to reconvey,” assume the position, and principle, that the interest of the debtor passed by the sale, and that this operation must of necessity be allowed to the act, as well in conformity to its spirit, as its letter. I cannot perceive any thing expressed or ever intimated in this act to change the law upon execution sales, and to introduce a different doctrine from that heretofore held, and so often to be found noticed and recognised in judicial decisions. That doctrine is, that a sale by execution is the substitute of a sale by the party himself, the debtor in the Execution. -And to make a valid sale or transfer of property which the term, execution sale means, from one man to another, such execution sale or transfer must be by deed in writing by virtue of the acts of assembly of 1715, c. 38, s. 5, and 1801, c. 25, s. 1.
When a sale or transfer of real estate is effected by execution, it is called a statute conveyance, because it is founded upon, or prescribed by statute; and to render it complete four requisites are necessary; a judgment against the debtor, a levy on the real estate, a sale by the Sheriff, or other proper officer, and a deed of conveyance by the officer to the purchaser — all these must exist and concur to make a valid transfer of the debtor’s interest in his real estate to the purchaser or highest bidder at the sale or auction, and when in our acts of assembly, Sheriff’s sale or execution sale, is spoken of, and the subject matter of it is real estate, all these are comprehended and understood to be existing. Therefore, when this act of 1820, c. 11 speaks of a debtor’s interest sold at execution sale, and purchaser at execution sale, it has reference to, and means a regular sale under our acts of assembly as above noticed; embracing all the requisites necessary to constitute and effectuate a transfer of the property to the purchaser; a very important one of which requisites is the deed; and to which the previous ones are only auxiliary. The two first, the judgment and levy, specifically fix the lien of the plaintiff’s claim to the subject matter, or object of the execution, the sale or auction designates the purchaser or alienee, but it belongs to the deed to *295 complete tlie tranfer and attain tlie end of the law: by divesting the seizin of the execution debtor in the case of a freehold or in the case of a less estate, the interest thereof, and passing the same to the purchaser. The difficulty caused by the want of a Sheriff’s deed to the purchaser, Firestone, in the present case was anticipated by the counsel, and it was endeavored to be obviated by recourse to the principle in equity, that the Court will consider that to be done, which ought to have been done. I question much the propriety of the application of this principle, to supply the defect of an execution sale in this State, where an execution operates on legal rights and interests; not on such as are equitable. In the State of New York, and perhaps in some other States where some equitable rights or interests are by statute made the subjects of an execution; there may be perhaps statu-table grounds for such application: but I apprehend that here the purchaser at an execution sale, on the want of a deed, would be met by the maxim of cavea¿envptor, and be left to his redress upon a proper proceeding for the purpose of perfecting his legal title. But be this as it may, the above principle cannot have any effect in the present case to supply the want of a Sheriff’s deed, for no reason appears why the party purchased at the Sheriff’s sale, and did not take a conveyance; it does not appear that the Sheriff would not give one, nor does it appear that the Sheriff was even asked for one; under such circumstances exhibiting a defective title through the mere default of the party, he cannot be heard claiming a right to have the defect overlooked, or considered as non existing.
But admitting it to be correct, that upon a proper proceeding in equity, he might compel a deed from the Sheriff; on which I have no opinion, that would be of no avail on the present occasion which requires a title perfected by a Sheriff’s deed, to have vested in him, Firestone,'the seizin and interest, which as a claimant of the rents and profits of land sold under the execution, he indispensably required. Firestone therefore, having no seizin, or other legal interest by virtue of his being purchaser or highest bidder at the execution sale, for want of a conveyance by the Sheriff, had no right to the rents and profits, of the land of Sheratts; and therefore no error in the decree of the Chancellor.
If, in the present case, the Sheriff had made a deed for Sheratts’ land to Firestone, the purchaser, and by that means completed the statutable conveyance; the question would have been made, which was argued with so much ability at the bar; but as that question is not presented by this record, it will come more properly to be examined when it is so presented.
Peck J.
In the record before us the question is raised — Do the rents arising from real estate purchased at Sheriff’s sale, go to the purchaser, or is it the right of the owner of the estate whose interest has been sold, but who under the act of 1820, ch. 11 s. 2, may redeem, to retain the same—
The second section of the act gives the right to redeem within two years *296 -on payment of the money bid, and ten per cent interest per annum: true it uses the expression that the purchaser shall reconvcy, which implies that the Sheriff may convey to the purchaser before the end of two years within which time the debtor may redeem — still, the only charge or incum-brance or lien given by the letter of the act, is the money bid with ten per cent — and the concluding part of the section is imperative “and upon payment or tender thereof, (the money bid and 10 per cent) it shall be the duty of the claimant to reconvey said interest to the debtor” &c. This act introducing new rules to be observed touching estates thereafter to be sold by Sheriffs, must be sensibly construed — if there is no ambiguity in wording the act, it is safest to follow the letter. In saying that the 10 per cent with the money bid and costs and charges included is all that the law allows to the purchaser at Sheriff’s sale, we not only follow the act in its terms, bitt we make it consistent with other statutes, the policy of the country, and as I conceive, the rules of equity — in the first place 10 per £ent is above the common or legal interest allowed by law in dealings between man and man — it might be a matter of speculation with the political economist to search for the cause why it is that the Courts of Justice are required, to hold in one hand the statutes against usury in dealings — amply armed with power to restrain and punish it even by a criminal prosecution, and at the same time are called upon to exact a fixed usury in so many cases following the Judgments of the tribunals of justice. While the constitution provides that courts shallbe open to the injured, and every man for the wrong done him shall have right and justice — and while writs are provided in the same instrument by which men may be enabled to resort to the courts, and the ministers there are by the laws armed with mercy on the one hand to such as may be oppressed by usury — and with the terrors of usury in the other to such as under the constitution have a right to and do travel into higher tribunals for the attainment of justice. Let others treat this as they may, the courts follow the law restraining themselves with this rule, that where a case does not come expressly within the jjrovision of the statute, usury is taken as a penalty and therefore not given. Try the question before us by this rule: here it is said that rent results from a vesting of the legal title by the deed of the Sheriff, not from the express letter of the act — nevertheless the same act gives a penalty to wit, the 10 per cent, and the purchaser bids for and takes the estate with a knowledge of his interest in or lien thereon; but shall we add an additional penalty— shall we give a double compensation to the purchaser, the one by following the letter of the act of assembly, the other and in most instances the heaviest penalty by construction or legal intendment. It cannot be, for it isthe province of courts of equity to lean against penalties, not to create and enforce them.
Equity does enough in all conscience, when it, by an act of the Legislature permits one man by the process of a court of justice to coerce from the tempest driven debtor 10 per cent on his money advanced and that secured by real estate at his own valuation. While in the same tribunal *297 the common dealer in money is restained strictly to Ms six per cent. When the act before ns was passed, the policy was to put it in the power of judgment debtors to save their estates, and while solicitude was felt, that they should have power to do so, the interest of the purchaser was not overlooked. Common dealings in the country, nay, the decrees of foreclosure at every term of our Courts of Chancery, prove that money may be vested at six per cent, in landed securities. While these facts were before the legislature, and now in view of this court, can we suppose it possible that it was ever intended by the law makers to encumber the debt- or with a rent on the land one day, which land might be redeemed the next; add to these considerations the embarrassment which would arise in case of disagreement about the amount of rent — -must the question be settled by a suit, and must the debtor to whom facilities are given to secure his estate, be subjected to cost and expense, touching the very rent which it is most natural to suppose was intended to be used to raise the funds with which to redeem.
The third section of the act assists in coming to a proper conclusion on this point. By this section another creditor may redeem from the purchaser, paying to him the money bid and 10 percent., on the doing of which, “it shall be the duty of the purchaser, or one claiming under him, to convey such interest to such creditor” — and it will be seen by looking to the 5th sec., that as many redemptions may take place as there are creditors. Now, it cannot be supposed that he who redeems last, shall have all the rent— if the rents pass, they should go rateably, and be apportioned according to the time each may have had his. right vested. The confusion this would lead to, is one argument against letting in an intendment, calculated to be productive of embarrassment, if not litigation.
While the policy of rendering lands liable for the satisfaction of debts is' fully recognized by the courts, still the manner of reaching them is taken with strictness. The modes of sales and transfers are the subjects of legislation. Possession is not delivered, but a deed by which possession can be obtained — admit, for the sake of argument, that the deed may be taken before the expiration of the two years, and admit that an ejectment might be brought on the deed for the possession of the land, and on recovery an action for mesne profits — still the deed, the action of ejectment, and the consequent action for mesne profits would in effect all be contingent. A redemption by the execution debtor, or by any creditor, would change the sit-uotion of parties, and overthrow the title and action founded on it. Could an action for the rent lie without the recovery in ejectment? I answer no— for there is no contract, express or implied, on which to found the action; but a much stranger reason arises out of the fact, that in all these provisions, the Legislature chose to be silent about rent purposely, because they never intended to allow any to the purchaser. The act of New York is not before us; how far a case there, and the one before us might be found parallel, I cannot pretend to say. That act, however, had the same policy in view *298 which produced the passage of the one we are construing, and in Now York', the rent is by decision of their courts given to the judgment debtor, 2Q John. R. 3. The case of Hawkins vs. Jemmison, Martin & Yerger, does not effect the case before us.